The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before former Deputy Commissioner Bernadine S. Ballance. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award except with the deletion of Finding of Fact number 17, and the modification of Conclusion of Law number 3, and Award number 1.
* * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
STIPULATIONS
1. All parties are properly before the Industrial Commission and are subject to and bound by the provisions of the North Carolina Workers' Compensation Act, that the Commission has jurisdiction over the parties and of the subject matter and that the employer-employee relationship existed between plaintiff and defendant-employer at the time of plaintiff's injury and that the defendant-employer is self-insured with Compsource as its adjusting agent.
2. All parties have been correctly designated and there is no question as to misjoinder or nonjoinder of the parties.
3. In addition to the other stipulations contained herein, the parties stipulate and agree to the following undisputed facts:
 a. The plaintiff's average weekly wage at the time of the injury will be established based on evidence presented at the hearing.
4. The following exhibits were admitted into evidence by stipulation:
 a. Medical bills and records from Satterwhite Chiropractic (3 pages);
b. Revco Discount Drug records (4 pages);
 c. Records from Oxford Family Physicians (5 pages);
 d. Records from Granville Family Medicine, P.A. (5 pages).
* * * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner and finds as follows:
FINDINGS OF FACT
1. The plaintiff was fifty years old at the time of the hearing and had a high school education. Prior to her employment by the defendant, she had held several different factory jobs, including working for Northern Telecom, Bardag and Kayser-Roth in and around the Oxford area. She had worked off and on for the defendant between 1992 and the date of her injury in February of 1994.
2. Plaintiff was employed on January 26, 1994 by the defendant-employer, Manpower Temporary Services to work on a temporary basis as an order filler at the Royal Home Fashions facility. Royal Home Fashions stocked fabric for home fashions, such as sheets and curtains.
3. The employment relationship existed between plaintiff and defendant-employer on February 5, 1994.
4. On February 5, 1994, a Saturday, plaintiff and her co-workers were assigned to rearrange the furniture and stock in the department where she worked. This involved moving large wooden tables, pulling heavy pallets with stock loaded on them, carrying boxes across the room and pulling heavy boxes off the shelf.
5. The task of rearranging the department was considerably heavier work than the jobs plaintiff had been hired to perform and required an unusual amount of very heavy lifting, pulling and carrying of large items in awkward positions. At around 10:30 in the morning, while undertaking to pull boxes weighing approximately 40 to 50 pounds down from a shelf, plaintiff pulled the first box down onto her shoulder and immediately felt a pain in her arm and neck.
6. Although the plaintiff was in pain, she kept working, since she did not realize the severity of her injury. As the day progressed, plaintiff felt the pain worsen in her arm and radiating from her neck.
7. After the plaintiff complained to her lead lady about the pain, she was put on sweeping rather than moving boxes for the rest of the day.
8. By 6:00 p.m. or 7:00 p.m. that evening, plaintiff was in so much pain that she knew she needed to go to a doctor. Since she had not realized how badly hurt she was in time to report it formally to Manpower and since she knew that Manpower's policy was that she had to have permission to go to their doctor, the plaintiff waited until the following Monday to go to the doctor, after she had reported the injury to defendant-employer.
9. Plaintiff went to Dr. Vu in Oxford, who diagnosed a muscle strain and thereafter went to Dr. Satterwhite, a chiropractor in Oxford. She went to the chiropractor on a regular basis six days a week at first, then five, then three, then two, until he released her to resume activities again. When plaintiff resumed her housework, she began having numbness in her arm and hand and the chiropractor referred her to Dr. Robert Price, a neurosurgeon in Durham.
10. When plaintiff went to Dr. Price for the first time on May 25, 1994, plaintiff was having symptoms of neck and left arm pain, along with numbness and tingling in both hands. Dr. Price ordered a myelogram and CT scan of the cervical spine and determined that as a result of her injury, plaintiff had a ruptured disk at C6-7 which was causing her symptoms.
11. On July 7, 1994 Dr. Price operated on the plaintiff to relieve the pressure on the nerve resulting from the ruptured disk.
12. By November 8, 1994 Dr. Price felt that plaintiff had reached maximum medical improvement and assigned her a 15% permanent partial disability rating to the spine.
13. On February 5, 1994 plaintiff suffered an injury by accident resulting in an injury to her cervical spine, while working for the defendant-employer.
14. To date, plaintiff has received no compensation for disability nor have her medical expenses been paid for this injury.
15. As a result of her injury by accident, the plaintiff was unable to earn any wages in any employment from February 6, 1994 through the date of hearing and continuing.
16. Plaintiff's average weekly wage was $248.61 based on her 1993 W-2 earnings of $12,927.50, which yields a compensation rate of $165.75 per week.
* * * * * * * * * * *
Based upon the findings of fact, The Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. On February 5, 1994 plaintiff suffered a compensable injury by accident arising out of and in the course of her employment with defendant-employer. N.C.G.S. § 97-2 (6).
2. At the time of the injury by accident the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
3. Plaintiff is entitled to temporary total disability compensation at the rate of $165.75 per week from February 6, 1994 and continuing for so long as she is disabled from her work-related injury. N.C.G.S. § 97-29.
4. Plaintiff is entitled to have defendants provide all past and future medical expenses incurred by plaintiff as a result of her injury. N.C.G.S. § 97-25; Hyler v. GTE Products, 333 N.C. 258,425 S.E.2d 698 (1992).
* * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
AWARD
1. Defendants shall pay compensation to plaintiff at the rate of $165.75 per week for her temporary total disability beginning February 6, 1994 and continuing until further order of this Commission.
2. Defendants shall pay all medical expenses incurred or to be incurred by plaintiff when bills for same are submitted to defendant or defendant-carrier and approved pursuant to procedures established by the Commission.
3. An attorney's fee in the amount of 25% of the award due plaintiff herein is hereby approved for plaintiff's counsel. Said fee shall be deducted and paid directly to plaintiff's counsel.
4. Defendants shall pay the costs due this Commission.
FOR THE FULL COMMISSION
 S/ __________________________ COY M. VANCE COMMISSIONER
CONCURRING:
S/ __________________________ J. RANDOLPH WARD COMMISSIONER
S/ __________________________ LAURA K. MAVRETIC COMMISSIONER
CMV/cnp/mj 3/5/96